UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONCEPTS NREC, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-12033-IT |
| | * | |
| SOFTINWAY, INC., and ACTUAL | * | |
| MECHANICS, LTD. and/or EC ACTUAL | * | |
| MECHANICS, LTD., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM ON DEFENDANT ACTUAL MECHANICS'
MOTION TO DISMISS

March 10, 2021

TALWANI, D.J.

Following an evidentiary hearing, the court issued an Electronic Order [#92] granting in

part and denying in part Defendant Actual Mechanics' Motion to Dismiss [#26]. This

memorandum provides the court's reasoning for that order.

I.     FACTS ALLEGED IN THE COMPLAINT

Plaintiff Concepts NREC, LLC ("Concepts") has accused Defendants SoftInWay, Inc.

("SoftInWay") and "Actual Mechanics"[1] of engaging in unscrupulous business practices

---

[1] The Complaint [#1] and First Amended Complaint [#20] named "Actual Mechanics Ltd." as a
Defendant. The pending Motion to Dismiss [#26] and related submissions were filed on behalf of
that entity, and SoftInWay's Answer and Counterclaim [#62], and other pleadings, similarly
referred to that entity as an ongoing concern. At the evidentiary hearing in this matter, after
evidence was introduced that Actual Mechanics Ltd. no longer exists and that its successor-in-
interest is a company called EC Actual Mechanics, Ltd., the court allowed the amendment of all
filings, including the First Amended Complaint and pending motion to dismiss, to replace
"Actual Mechanics, Ltd.," with "Actual Mechanics, Ltd., and/or EC Actual Mechanics, Ltd.,"
which the court refers to here as "Actual Mechanics."

including copyright infringement and trade secret misappropriation. Plaintiff Concepts is a Delaware corporation with its principal place of business in Vermont and an office in Massachusetts. First Am. Compl. ¶ 1 [#20]. Defendant SoftInWay is a Massachusetts corporation with its principal place of business in Massachusetts. Id. ¶ 2. SoftInWay's registered agent for service of process is Dr. Leonid Moroz. Id. Defendant Actual Mechanics' principal place of business is in Kharkov, Ukraine. Id. ¶ 3.

Plaintiff contends that SoftInWay and Actual Mechanics are not separate entities but act as a "common enterprise to develop, sell, and provide training services related to AxSTREAM— the software that competes with the software of Concept's that is at issue in this matter." Id. ¶ 10. Specifically, Plaintiff contends that although SoftInWay and Actual Mechanics may be, on paper, separate corporate entities, they hold themselves out to the world as the same entity and do business as a single entity would, with Actual Mechanics functioning as SoftInWay's "Ukraine office." Id. ¶¶ 3, 10–21. In effect, Plaintiff contends that Actual Mechanics serves as SoftInWay's "development arm" for the infringing software products and provides end-user services related thereto. Id. ¶ 21.

In or about 2002, Plaintiff's predecessor-in-interest, Concepts ETI Inc. (also referred to as "Concepts") hired SoftInWay as a consultant to help write code for Concepts' turbomachinery development software, AxCent. Id. ¶¶ 64–66. Through this arrangement, Plaintiff provided SoftInWay with limited access to the AxCent software. Id. ¶ 66. At the time, SoftInWay did not compete with Plaintiff but instead wrote software for third parties. Id. ¶ 66. Within a year of discontinuing work for Concepts, SoftInWay launched a competitive product to AxCent "presumably from the information it learned while working with Concepts." Id. ¶ 67. This product is called "AxSTREAM." Id. ¶ 94.

Through technology meant to detect and report software piracy, Plaintiff has received information, most recently on February 13, 2019, showing that versions of unlicensed and pirated AxCent software have been used by Actual Mechanics on at least seven occasions. Id. ¶ 95.

## II.   PROCEDURAL BACKGROUND RELEVANT TO THE PENDING MOTION

After initiating this action, Plaintiff filed a Proof of Service [#6] as to SoftInWay and a Proof of Service [#7] as to "Actual Mechanics Ltd a Division of SoftWay Inc Care of SoftWay Inc." (misspellings in original). Both documents reflected service on "Mellisa Sherlin," identified as SoftInWay's office manager. See Proof of Service [#6]; Proof of Service [#7].

Plaintiff subsequently filed the First Amended Complaint [#20], asserting Copyright Infringement (Count I), Violation of the federal Defend Trade Secrets Act (Count II), Trade Secret Misappropriation under Massachusetts statutory law (Count III), Trade Secret Misappropriation under Massachusetts common law (Count IV), and Unfair and Deceptive practices in violation of Massachusetts law (Count V). SoftInWay filed a Motion to Dismiss for Failure to State a Claim [#22] pursuant to Fed. R. Civ. P. 12(b)(6). Represented by the same counsel, Actual Mechanics also filed a Motion to Dismiss [#26], presenting a similar argument that the First Amended Complaint failed to state a claim, but also raising jurisdictional arguments. Namely, Actual Mechanics contended that it was not properly served, that the court does not have personal jurisdiction over Actual Mechanics as it is a Ukrainian entity, and that Actual Mechanics was "not related to SoftInWay" where the two companies were "nothing more than business partners." Actual Mechanics' Mem. Supp. Mot. Dismiss 14 [#27]. In response, Plaintiff contended that SoftInWay and Actual Mechanics were not arm's length business partners, but a common enterprise. See Pl.'s Opp'n Def. Actual Mechanics' Mot. Dismiss [#34].

3

At the Rule 16 scheduling conference, the court heard limited argument on the pending motions to dismiss. The court denied SoftInWay's motion to dismiss, see Elec. Order [#48], and issued a Scheduling Order [#51], directing that discovery commence as to SoftInWay but temporarily staying discovery as to Actual Mechanics while Plaintiff pursued service through the Hague convention. The court subsequently set this matter for an evidentiary hearing to take evidence and testimony as to whether Defendants operated as alter egos of one another (which, as discussed further below, would obviate the need for service through the Hague convention). See Elec. Order [#66]. The evidentiary hearing took place on November 17, 2020 and November 18, 2020, with closing arguments presented on November 30, 2020.

Actual Mechanics' motion to dismiss rests on three separate arguments. First, Actual Mechanics contends that it does not have sufficient contacts with either Massachusetts or the United States to subject itself to this court's jurisdiction. Second, Actual Mechanics contends that, as a Ukraine corporation, Actual Mechanics has not been properly served through the summons served upon SoftInWay's office manager in Massachusetts. Third, Actual Mechanics contends that, beyond any jurisdictional issues, Plaintiff has failed to state a claim for which it is entitled to relief. The court discusses these arguments in turn.

III.   PERSONAL JURISDICTION

A.   Standard

An alter ego relationship between SoftInWay and Actual Mechanics would allow this court to exercise personal jurisdiction over Actual Mechanics since it is not disputed that it may exercise personal jurisdiction over SoftInWay. As the Fifth Circuit stated in Patin v. Thoroughbred Power Boats Inc.:

> [F]ederal courts have consistently acknowledged that it is compatible with due
> process for a court to exercise personal jurisdiction over an individual or a
> corporation that would not ordinarily be subject to personal jurisdiction in that
> court when the individual or corporation is an alter ego or successor of a
> corporation that would be subject to personal jurisdiction in that court. The theory
> underlying these cases is that, because the two corporations (or the corporation
> and its individual alter ego) are the *same entity*, the jurisdictional contacts of one
> are the jurisdictional contacts of the other for the purposes of the International
> Shoe due process analysis.

294 F.3d 640, 653 (5th Cir. 2002) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

See also United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 627 (1st Cir. 2001) ("The

government concedes that personal jurisdiction extends to [the foreign entity] only if (1) the

government makes a prima facie case for jurisdiction over [the domestic entity] and if (2) the

government can establish alter ego liability [between the domestic entity and the foreign

entity]"). Accordingly, the question of whether Actual Mechanics is an alter ego of SoftInWay is

key to the personal jurisdiction analysis.

　　The parties agree that Massachusetts law provides the correct rubric for the question of

whether SoftInWay and Actual Mechanics are in fact alter egos, which would pierce the

presumptive corporate veil that exists between the two entities.[2] The Massachusetts Supreme

Judicial Court ("SJC") has identified the following twelve factors that courts may look to as part

of a "evaluative consideration" of whether corporate formalities should be set aside:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of
> business assets; (4) thin capitalization; (5) nonobservance of corporate
> formalities; (6) absence of corporate records; (7) no payment of dividends; (8)
> insolvency at the time of the litigated transaction; (9) siphoning away of

---

[2] In federal question cases, such as this one, the court looks to federal choice of law principles for
determining which veil-piercing inquiry applies. Bhd. of Locomotive Engineers v. Springfield
Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000). Here, the federal statutes in question do not
demand national uniformity, particularly as applied here, and thus state law provides the
determinative rules of decision. See id. (citing United States v. Kimbell Foods, Inc., 440 U.S.
715, 728 (1979)).

corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Scott v. NG U.S. 1, Inc., 450 Mass. 760, 768, 881 N.E.2d 1125, 1132 (2008) (citing Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n.19, 736 N.E.2d 373 (2000)). However, not just any permutation of these twelve factors provides a sufficient basis for a court to disregard corporate formalities. Instead, the SJC has made clear that one of two situations must be present. First, "[a] veil may be pierced where the parent exercises 'some form of pervasive control' of the activities of the subsidiary 'and there is some fraudulent or injurious consequence of the intercorporate relationship.'" Scott, 450 Mass. at 767, 881 N.E.2d at 1132 (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619, 233 N.E.2d 748, 752 (1968)). Alternatively, the veil may be pierced where "'there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'" Id. (citing My Bread Baking, 353 Mass. at 619, 233 N.E.2d at 752). Accordingly, while the court looks to evidence as to all the twelve enumerated factors, the center of the inquiry is whether either of the two situations calling for disregard of the corporate form are present. In this analysis, the court is mindful that there is a "presumption of corporate separateness that must be overcome by clear evidence . . . ." Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (quoting Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980)).

In addition, "[t]he burden of proving jurisdictional facts is upon the plaintiff." Aro Mfg. Co. v. Auto. Body Rsch. Corp., 352 F.2d 400, 403 (1st Cir. 1965); see also A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). In the typical case, the court would consider

whether the Plaintiff "has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (citing Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). However, this "prima facie" standard is inappropriate where there are "conflicting versions of the facts." Foster-Miller, 46 F.3d at 145. In such instances, a court may hold an evidentiary hearing and resolve, on a preponderance-of-the-evidence standard, all factual disputes giving rise to the jurisdictional questions. Id. However, where, as here, the jurisdictional questions are tied up with the facts pertinent to the merits, a binding adjudication of an ultimate issue is disfavored in a pretrial context insofar as it wastes judicial resources, risks final resolution on incomplete and imperfect evidence, and may deprive a party of the right to trial by jury. Id. at 146.

Where courts are stuck between a prima facie standard and a preponderance-of-the-evidence standard, courts "may steer a third course" and "apply an intermediate standard" wherein the court examines the evidentiary record and determines "whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction." Boit, 967 F.2d at 677. As the First Circuit wrote in Foster-Miller, this intermediate standard has its own perils and when employing the intermediate standard, it is important to ensure that the parties are provided adequate notice, reasonable access to discovery, and a meaningful opportunity to present evidence. 46 F.3d at 148. Here, the court has notified the parties of its intent to resolve the factual disputes giving rise to the jurisdictional questions on an intermediate standard and the parties have agreed that the charted course is appropriate here. See Hr'g Tr. 10–12 [#88]. Defendants have not requested any discovery for the purposes of this motion and the

court has provided both parties with a meaningful opportunity to present evidence and arguments over the course of a three-day hearing.

        B.      <u>The Twelve Factors</u>

The court considers first the evidence related to the twelve factors identified above. Actual Mechanics introduced the testimony of Dr. Leonid Moroz, CEO of SoftInWay, and Mr. Vladimir Chelak, Director of Actual Mechanics. Both parties also submitted exhibits into the record.

        1.   *Ownership*

Dr. Leonid Moroz owns 85% of both Actual Mechanics and SoftInWay. Defs.' Exs. S3, A2. The remaining 15% of SoftInWay is owned by Olga Moroz, Dr. Moroz's wife. Defs.' Ex. S3. The remaining 15% of Actual Mechanics is owned by a Dr. Petr Pagur (10%) and Mr. Chelak (5%). Defs.' Ex. A2 at ¶ 28 [#69-11].

        2.   *Control and Intermingling of Business Assets*

Dr. Moroz and Mr. Chelak testified that SoftInWay and Actual Mechanics had separate officers—with Dr. Moroz serving as CEO of SoftInWay and Mr. Chelak serving as Director of Actual Mechanics—and each testified that he was responsible for the day-to-day operations of his respective company with no direction from the other. <u>See, e.g.</u>, Hr'g Tr. 72:20–24; 77–78 [#89]. Both Dr. Moroz and Mr. Chelak further testified that that the only day-to-day interactions between the two companies took place per the terms of the consulting agreements wherein "Actual Mechanics agreed to help with development of software and perform quality assurance for development [of] software." <u>See, e.g.</u>, Hr'g Tr. 76–77 [#88].

However, the terms of the consulting agreements[3] provided SoftInWay pervasive, if not complete, control over Actual Mechanics' most valuable asset: its employees' intellectual work. Namely, the consulting agreements granted to SoftInWay an "exclusive right" to represent Actual Mechanics "in any and all SoftInWay accounts at any locations specified by SoftInWay." See Defs.' Exs. S5–S7 ¶ 8. The agreements also provided that SoftInWay would be the "exclusive distributor of Consultant's [that is, Actual Mechanics'] services at any location." Id. Even more, the consulting agreements provided that "SoftInWay shall have direct control over the daily activities of Consultant personnel [that is, Actual Mechanics' employees] unless otherwise stated in an Assignment." Id. ¶ 3.

Consistent with the terms of the consulting agreements, Plaintiff produced substantial evidence that, in practice, SoftInWay exercised pervasive control over Actual Mechanics' employees to the extent that the line between being a SoftInWay employee and an Actual Mechanics employee was inextricably intermingled. Furthermore, Plaintiff put forth evidence that the line between the two companies themselves became largely fanciful.

First, Plaintiff introduced evidence that SoftInWay holds out Actual Mechanics' employees as not only SoftInWay employees, but as SoftInWay's leaders and executives. For example, SoftInWay's website represents Dr. Boris Frolov as its "Director of Engineering," Dr. Yuri Govorushenko as its "Chief Scientist," and Dr. Petr Pagur (noted earlier as a 10% owner of Actual Mechanics) as its "Director of Strategic Development." Pl.'s Ex. 3, at 1–2 [#35-3]; see also Pl.'s Ex. 18, at 4 [#35-18] (PowerPoint slide from industry convention where SoftInWay

---

[3] There were at least three different consulting agreements between SoftInWay and Actual Mechanics, entered in 2004, 2012, and 2014. See Defs.' Exs. S5–S7. Because the pertinent provisions are identical across the three agreements, the court refers to them collectively as the "consulting agreements."

lists these same employees as SoftInWay's "Scientific Management Team"). However, each of these individuals are, at least on paper, not employed by SoftInWay, but by Actual Mechanics. Hr'g Tr. 21:16, 25:13, 30:11 [#89].

Second, Plaintiff submitted evidence demonstrating that Actual Mechanics' employees hold *themselves* out as SoftInWay employees. For example, Dr. Petr Pagur represents on his LinkedIn page that he has been the Chief Executive Officer of Actual Mechanics since 2002 while simultaneously serving as the Chief of Support and Development of SoftInWay since 1999. Pl.'s Ex. 10 [#35-10]. Similarly, Dr. Boris Frolov represents on his LinkedIn page that he has been the Director of Engineering at SoftInWay since 2011. Pl.'s Ex. 13 [#35-13]. However, as noted above, these two individuals are only employed by Actual Mechanics. This practice seems ubiquitous as Plaintiff has put forth evidence indicating that of 64 individuals who identify as SoftInWay employees on LinkedIn, 27 of them live in Ukraine, more than those who live in the United States. Pl.'s Ex. 7 [#35-7]. Furthermore, Dr. Moroz testified that SoftInWay only had ten employees. Hr'g Tr. 70:7 [#88].

Beyond the company website and social media, Plaintiff also put forth other categories of documents showing that employees of Actual Mechanics were internally considered to be employees of SoftInWay. For example, Plaintiff introduced several scientific publications where Dr. Moroz coauthored articles with Drs. Frolov, Kocurov, Pagur, and Govoruschenko. Pl.'s Exs. 25–29 [#35-25 to #35-29]. The manuscripts, which all authors ostensibly read and approved, stated that Dr. Moroz's coauthors were affiliated with SoftInWay in Massachusetts. Indeed, the article never mentioned Actual Mechanics. Id. Even more, Plaintiff introduced evidence showing that in research proposals submitted to the United States government, SoftInWay represented

that at least one employee of SoftInWay, Mr. Maksym Burlaka, was an application engineer at
Actual Mechanics. Pl.'s Ex. 72; Hr'g Tr. 68–69 [#89].

Third, Plaintiff put forward substantial evidence showing that, in practice, Actual
Mechanics operated as a subsidiary of SoftInWay and that SoftInWay held out Actual Mechanics
not as a "business partner," but as an office or division of SoftInWay. For example, SoftInWay's
Twitter and LinkedIn pages list the company as having locations in the United States,
Switzerland, India, and Ukraine. Pl.'s Exs. 4, 5 [#35-4, #35-5]. Dr. Valentine Moroz, Dr. Leonid
Moroz's son and SoftInWay's Chief Operations Officer, described SoftInWay in an online post
as "hav[ing] 5 offices" including in "Kharkov, Ukraine." Pl.'s Ex. 9 [#35-9]. Similarly, in public
presentations, SoftInWay represented that it had "five offices" including in Ukraine. Pls.' Exs.
18, 19 [#35-18, #35-19]. These representations were also made in a grant proposal submitted to
the United States government, where SoftInWay represented not only that it had an office in
Ukraine, but that Actual Mechanics was a "subsidiary of SoftInWay, Inc. since 2013." Pl.'s Ex.
71. On its website, SoftInWay includes Actual Mechanics with a list of other "distributors" but
lists Actual Mechanics' contact email as "Ukraine@softinway.com." Pl.'s Ex. 1. See also Pl.'s
Exs. 16, 17 [#35-16, #35-17] (providing the same contact information in marketing materials).

Fourth, Plaintiff put forth evidence that SoftInWay exerted operational control over
Actual Mechanics' day-to-day operations. For example, Plaintiff put forth evidence indicating
that Actual Mechanics employees used a SoftInWay domain for their day-to-day emails. Pl.'s
Exs. 25–27 [#35-25–35-27], Plaintiff also put forth evidence showing that a SoftInWay
employee was hiring employees for Actual Mechanics in Ukraine. See Pl.'s Exs. 23, 23B [#35-
23] (online job posting for Actual Mechanics in Ukraine listing contact email as
a.bassi@softinway.com). Likewise, Plaintiff produced an email showing that Dr. Moroz was

11

communicating with the South Korea consul in Ukraine, not the United States, regarding an employee for both SoftInWay and Actual Mechanics. Pl.'s Ex. 68.

### 3. *Capitalization*

Actual Mechanics' organizational documents show that Actual Mechanics has been thinly capitalized throughout its existence. In its 2004 charter for the predecessor-in-interest Actual Mechanics Ltd., the company was capitalized with contributions of a personal computer and a computer monitor for Dr. Pagur's 10% share; a personal computer for Mr. Chelak's 5% share; and five personal computers and four monitors for Dr. Moroz's 85% share. Defs.' Ex. A1, at Article 5 [#69-10]. The 2012 documents for the successor-in-interest, EC Actual Mechanics Ltd., show the company's capitalized value as $20,500 United States Dollars. Defs.' Ex. A2 ¶ 28 [#69-11]. Dr. Moroz testified that these are the only capital contributions that he has ever made to the Actual Mechanics entities. Hr.'g Tr. 59:16–18 [#89].

### 4. *Corporate Formalities*

The documents offered by Actual Mechanics show some observance of corporate formalities. First, Actual Mechanics and SoftInWay are indeed separately incorporated. See Defs.' Exs. S1–S4, A1–A2. Second, the sole ownership change for SoftInWay was documented, where Ms. Moroz transferred 35% of the company (of her 50% total) to Dr. Moroz. See Defs.' Ex. S3. Third, the 2004, 2012, and 2014 versions of the consulting agreements between SoftInWay and Actual Mechanics purport to set forth an arms-length relationship between two separate entities. See Defs.' Exs. S5–S7.

12

5. *Corporate Records*

Dr. Moroz and Mr. Chelak offered testimony that SoftInWay and Actual Mechanics kept separate records, such as bank accounts and payroll, and that the two companies did not intermingle their records. Hr'g Tr. 69–70; 89–90 [#88].

6. *Payment of Dividends*

No documentary evidence or testimony was provided as to this factor.

7. *Solvency or Insolvency at the Time of the Litigated Transaction*

Both Dr. Moroz and Mr. Chelak testified that SoftInWay and Actual Mechanics were always solvent. Hr'g Tr. 72:3–4 [#88]; Hr'g Tr. 92:3–4 [#89].

8. *Any Siphoning Away of Corporation's Funds by Dominant Shareholder*

No documentary evidence or testimony was provided as to this factor.

9. *Functioning or Nonfunctioning of Officers and Directors*

Mr. Chelak testified that he served as the Director of Actual Mechanics, that the role of the Director was "the highest executive level" at Actual Mechanics, and that he "[does not] report to anyone." Hr'g Tr. 72:21–24 [#89]. However, as discussed above, Plaintiff introduced evidence that SoftInWay employees, as opposed to Actual Mechanics employees, hired personnel for Actual Mechanics and made arrangements for Actual Mechanics' employees' work authorization with a foreign consulate. See Pl.'s Exs. 23 & 23B, 68 [#35-23]. Plaintiff also offered the consulting agreements which specified SoftInWay's direct control over Actual Mechanics' employees performing work for SoftInWay. Plaintiff also offered evidence that Dr. Petr Pagur—who is, by all accounts, a founding member and director of Actual Mechanics, and,

by some accounts, the Chief Executive Officer of Actual Mechanics[4]—holds himself out as an employee of SoftInWay.

> 10. *Use of the Corporation for Transactions of the Dominant Shareholders*

No documentary evidence or testimony was provided as to this factor.

> 11. *Use of the Corporation in Promoting Fraud*

The First Amended Complaint alleges that SoftInWay, Plaintiff's competitor, uses Actual Mechanics as its "development arm" and, through Actual Mechanics, infringes on Plaintiff's trade secrets and copyrights. First Am. Compl ¶¶ 7, 94 [#20]. However, these allegations have not yet been substantiated with evidence.

> C.    Disregard of the Corporate Form

There are two avenues by which Plaintiff can persuade the court to disregard the presumption given to corporate separateness and treat SoftInWay and Actual Mechanics as one and the same for the purposes of this proceeding. Both are potentially applicable here. In one, Plaintiff may show "some form of pervasive control" of the activities of the subsidiary *and* that there is some fraudulent or injurious consequence of the intercorporate relationship. As previously noted, Plaintiff has alleged that such an arrangement exists (i.e., that Actual

---

[4] Dr. Pagur's role at both Actual Mechanics and SoftInWay remains elusive. Dr. Pagur is the second-largest shareholder of Actual Mechanics with 10% ownership of the company. See Exs. A1 & A2 [#69-2, #69-3]. Dr. Moroz testified that Dr. Pagur was Actual Mechanics' "technical director." Hr'g Tr. 21:16 [#89]. However, Dr. Moroz later testified that Dr. Pagur was Actual Mechanics' "Director of Strategic Development." Hr'g Tr. 26:9–11 [#89]. Either way, both Dr. Moroz and Mr. Chelak state that Dr. Pagur was involved in the formation of Actual Mechanics in 2004. Hr'g Tr. 33, 75 [#89]. For his part, Dr. Pagur states on his LinkedIn page that he has been both the Chief Executive Officer at Actual Mechanics since 2002 and the Chief of Support and Development at SoftInWay since 1999. See Pl.'s Ex. 10 [#35-10].

Mechanics is used as a conduit for SoftInWay to gain the benefits of infringing on Plaintiff's intellectual property rights without being held accountable). However, at this stage of the proceedings there is no proof supporting this allegation and so the court focuses on the second avenue. That is: whether there was a confused intermingling of activity between Actual Mechanics and SoftInWay, that these two corporations were engaged in a common enterprise, and that they acted with serious ambiguity about the manner and capacity in which the two corporations and their respective representatives were acting.

Considering the factors set forth in the previous section, there is abundant evidence to support a preliminary finding that SoftInWay and Actual Mechanics are alter egos under this second criteria. The evidence consistently indicates that the two companies operated in a common enterprise and that the lines between the one and the other were, at best, ambiguous. The "consulting agreements" between the two companies demonstrate that, for all practical purposes, Actual Mechanics' employees operated exclusively under the direction of SoftInWay. The extent of the comingling and resulting confusion between the two entities is hallmarked by the substantial evidence that not only did the employees see working as one company as working for the other, but that the companies themselves treated the two interchangeably. On top of evidence of comingling and pervasive control, the fact that Dr. Moroz owns 85% of both entities, that Actual Mechanics is thinly capitalized, and the apparent confusion about whether Actual Mechanics' Founding Member/CEO/Technical Director/Director of Strategic Development Dr. Petr Pagur is, in fact, an employee of Actual Mechanics, leads the court to conclude that there is a substantial likelihood that Plaintiff will ultimately be able to establish on a complete record that Actual Mechanics is an alter ego of SoftInWay.

While Defendants introduced evidence in rebuttal, that evidence was not particularly persuasive. Defendants have put forth documentary evidence that Actual Mechanics and SoftInWay are in fact separately incorporated and have, at least on several occasions over the past 15 years, followed corporate formalities by ratifying articles of incorporation, stock ledgers, and stock transfers. These documents are sufficient to entitle Defendants to their presumption that Actual Mechanics and SoftInWay are truly separate entities, see Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 128 (1st Cir. 2006), but they do little to rebut the evidence put forward by Plaintiff to overcome that presumption.

The centerpiece of Defendants' case that SoftInWay and Actual Mechanics are separate entities was the testimony offered by Dr. Moroz and Mr. Chelak. The gist of the testimony provided by both individuals was that Actual Mechanics operated completely independently from SoftInWay under the direction of Mr. Chelak and that the two companies were "nothing more than business partners." Actual Mechanics' Mem. Supp. Mot. Dismiss 14 [#27]. More specifically, both testified that Actual Mechanics was simply a contractor for SoftInWay per the terms of the consultancy agreements, that the companies had separate directors, that the companies maintained separate books and payrolls, that neither entity had ever gone insolvent, and that Actual Mechanics had clients other than SoftInWay from which it derived most of its business. However, the court did not find the testimony provided by either individual to be credible.

Starting with Dr. Moroz, his explanations for certain inconvenient facts did not ring true. When asked why Dr. Moroz allowed Actual Mechanics employees to represent themselves as SoftInWay employees, Dr. Moroz stated that he had "no right" to ask Mr. Chelak to stop the practice even though he owns 85% of Actual Mechanics, hired Mr. Chelak, has the power to fire

Mr. Chelak, and has the authority to terminate the two companies' asserted business relationship. Hr'g Tr. 115:9–13 [#88]. When asked what services Actual Mechanics performed *for* SoftInWay under the consulting agreements, Dr. Moroz explained that Actual Mechanics marketed services to SoftInWay clients, but when asked for details on cross-examination, Dr. Moroz stated that SoftInWay actually marketed SoftInWay services "to ourself" and that he could not recall any "real clients who Actual Mechanics did service for software development." Hr'g Tr. 7:21–8:14 [#89]. Then, when asked about the services that SoftInWay provided to Actual Mechanics, Dr. Moroz initially testified confidently that such transactions occurred, but then when asked whether records of these transactions existed, Dr. Moroz became more circumspect, saying that he did not remember any transactions and that "if these transactions happens, I guess it will be in the record if it's according to law in—still in—in the contract document." Id. at 13:17–20.

At another point in his testimony, Dr. Moroz was confronted with the marketing documents showing that SoftInWay stated that it had offices in Massachusetts, New York, Switzerland, India, and Ukraine. Initially, Dr. Moroz claimed that SoftInWay was not representing that it actually had offices in those locations but was just conveying that "we have people who speak their languages in their locations." Id. at 39:24–25. When Plaintiff's counsel noted that the same language is spoken in Massachusetts and New York, and that, in any event, the marketing documents actually referred to the different locations as "our offices," Dr. Moroz's response was to say it was all just a "mistake." Id. at 42:2–9.

These examples are representative of much of Dr. Moroz's testimony, which did not seem completely candid. For example, when Dr. Moroz was presented with emails between him and a Ms. Anastasia Bassi from *March 2019* in which Dr. Moroz was asking Ms. Bassi to prepare or translate letters in relation to business in Ukraine (Ms. Bassi is located in Ukraine),

Dr. Moroz was not able to say whether Ms. Bassi was a SoftInWay employee. Id. at 53:2–7. This is particularly remarkable where Dr. Moroz testified that SoftInWay only has ten employees. Hr'g Tr. 70:7 [#88]. Likewise, despite owning 85% of Actual Mechanics since its inception, Dr. Moroz was not able to recall whose idea it was to start the company. Hr'g Tr. 58:1 [#89]. Perhaps most troubling, at one point Plaintiff's counsel asked Dr. Moroz why the SoftInWay website changed the contact information for Actual Mechanics from "Ukraine@SoftInWay.com" to "www.actualmechanics.com" sometime between October 15, 2019, and January 23, 2020. Id. at 23:12. (SoftInWay was served with the summons in this action on October 9, 2019, see Return of Summons [#6]). In response, Dr. Moroz said that it was "because it was too much junk which come, and we didn't want to receive the junk." Hr'g Tr. 23:14–15 [#89]. When asked if that was the only reason and whether the lawsuit played any role, he responded: "Sorry. I don't recall. I remember we received a lot of junk mail and—from different locations. It's—and it was one of the—nature why we change it. And that's it." Id. at 23:16–25.

Mr. Chelak's testimony was similarly problematic. Like Dr. Moroz, although Mr. Chelak was a founding member of Actual Mechanics and its Director since inception, he could not recall how the company came into existence. Hr'g Tr. 94:22–24 [#89]. When Mr. Chelak was asked who was paying for the attorneys representing Actual Mechanics in this proceeding, he responded: "I haven't paid yet." Id. at 102:6–8. When counsel followed up and asked whether he intended to pay the firm for his company's representation, Mr. Chelak responded "I think so." Id. at 102:11–14 [#89].[5] Then, when Mr. Chelak was asked whether he knew Ms. Anastasia Bassi— the individual located in Ukraine who was working with Dr. Moroz to translate documents into

---

[5] As of the date of this order, counsel has represented Actual Mechanics in this matter for over a year and has filed numerous pleadings on Actual Mechanics' behalf.

Ukrainian and who was also recruiting employees for Actual Mechanics and preparing immigration letters for the benefit of an Actual Mechanics employee—Mr. Chelak responded: "I don't remember at the moment any such person." Hr'g Tr. 108:2 [#89].

In sum, the court finds that the evidence portends a strong likelihood that Plaintiff will ultimately be able to overcome the presumption of corporate separateness and establish that Actual Mechanics operated as an alter ego of SoftInWay for the relevant period. Although the relevant evidentiary record is incomplete (despite most, if not all, of the relevant documents being in Defendants' custody and control), an evaluative analysis of the evidence that has been entered portends that Plaintiff will, at the least, be able to establish a "confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." See Scott, 450 Mass. at 767, 881 N.E.2d at 1132 (quoting My Bread Baking, 353 Mass. at 619, 233 N.E.2d at 752). Importantly, the court does not reach a final resolution of this question and this preliminary finding does not prejudice that ultimate determination.

Because Plaintiff has met its burden of establishing on a preliminary basis that Actual Mechanics operates as SoftInWay's alter ego under Massachusetts law, and because the court may assert personal jurisdiction over SoftInWay, it may also assert personal jurisdiction over Actual Mechanics. See Patin, 294 F.3d at 653; see also Swiss Am. Bank, 274 F.3d at 627.

IV.     SERVICE OF PROCESS

Service of process on a foreign defendant need not be effectuated through the Hague Convention so long as service complies with the internal law of the forum. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 704 (1988). In effect, if the law of the forum allows

service of process through an agent or alter ego, service rendered on a domestic agent or alter ego can reach the foreign entity without the need for the Hague convention procedures. See Lisson v. ING GROEP N.V., 262 Fed. Appx. 567, 570 (5th Cir. 2007) ("[A]s long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary—without sending documents abroad.") (quoting Sheets v. Yamaha Motors Corp. U.S.A., 891 F.2d 533, 536 (5th Cir. 1990)); see also Aro Mfg. Co. v. Auto. Body Research Corp., 352 F.2d 400, 403 (1st Cir. 1965) (declining to find that service on the subsidiary entity constituted service on the parent entity where there were only conclusory allegations of an alter ego or agency relationship). Here, there is no dispute that the law of the forum (Massachusetts) allows service through an agent or an alter ego.[6]

Because Massachusetts allows proper service on one party to reach that party's alter ego, Plaintiff may serve Actual Mechanics by serving Defendant SoftInWay. See Schlunk, 486 U.S. at 704. However, service on SoftInWay must still be proper under the federal rules.

Federal Rule of Civil Procedure 4(h) sets forth the requirements for service of process upon corporations. It provides that service on a corporation in a judicial district of the United States may be effected either by "delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule

---

[6] Alternatively, courts have found that, under Fed. R. Civ. P. 4(e)(1) or 4(h)(1)(B), service on a subsidiary entity may reach a foreign parent entity so long as the subsidiary acts as an agent or alter ego. See Gallagher v. Mazda Motor of America, 781 F. Supp. 1079, 1083 n.8 (E.D. Pa. 1992); Hickory Travel Sys., Inc. v. TUI AG, 213 F.R.D. 547, 552–53 (N.D. Cal. 2003); Akzona v. E.I. Du Pont De Nemours & Co., 607 F. Supp. 227, 237 (D. Del. 1984).

4(e)(1) provides that a party may be served by following the provisions for service set forth by the state in which the district court is located. In relevant part, Massachusetts Rule of Civil Procedure 4(d) provides that service upon a domestic corporation may be made by:

> delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process, provided that any further notice required by law be given.

Here, service of process on Actual Mechanics (through SoftInWay) was made on an office manager at SoftInWay who is not SoftInWay's registered agent. See Proof of Service [#7]. Plaintiff offered no other basis to meet the other requirements under either the federal or Massachusetts rules. Accordingly, service was deficient. Where a plaintiff has not established proper service of process, courts have discretion under Fed. R. Civ. P. 12(b)(5) either to dismiss the complaint or to quash service of process. However, "[t]he dismissal of a complaint is an inappropriate exercise of this discretion when there exists a reasonable prospect that service may yet be obtained." Cutler Assocs., Inc. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 194 (D. Mass. 2015). Here, because there was no reason to conclude that Plaintiff would not be able to perfect service upon Defendant Actual Mechanics through SoftInWay, the court quashed service of process but did not dismiss the complaint.[7]

### V.    THE AMENDED COMPLAINT STATES A CLAIM FOR RELIEF

Under Fed. R. Civ. P. 12(b)(6), the well-pleaded facts in Plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

[7] After the court issued its electronic order denying dismissal on this ground, Defendants waived service. See Waivers of Service [#95, #96].

(2007). In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

Defendant Actual Mechanics' last argument is that, even if the court has jurisdiction over Actual Mechanics, the First Amended Complaint [#20] fails to state a claim for relief. Defendant presents two arguments for why the pleadings are deficient. Neither are persuasive. First, Defendant argues, without providing any supporting authority, that Plaintiff cannot prosecute a trade secret claim where the complaint does not allege misappropriation of source code. Actual Mechanics' Mem. Supp. Mot. Dismiss 16–17 [#27]. However, Defendant's argument introduces a dispute of fact (i.e., whether the allegedly misappropriated software constituted a secret) and thus resolution on the pleadings is not appropriate. Second, Defendant argues that Plaintiff's trade secret and ch. 93A claims are time barred as a matter of law because Plaintiff knew that SoftInWay and Actual Mechanics had a competing product as early as 2003. Actual Mechanics' Mem. Supp. Mot. Dismiss 18 [#27]. However, judgment on the pleadings based on the statute of limitations is appropriate only where the pleadings, construed in the light most flattering to the non-moving party, leave no plausible basis for believing that the challenged claim is timely. Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 35 (1st Cir. 2011). Here, Plaintiff includes allegations in the complaint indicating that it was not until 2019 that it become aware of the alleged conduct giving rise to its claims as a result of information received through

Plaintiff's anti-piracy software. <u>See</u> First Am. Compl. ¶ 95 [#20]. Accordingly, Plaintiff's claims are not subject to dismissal as untimely under Fed. R. Civ. P. 12(b)(6).

VI.   <u>CONCLUSION</u>

For the reasons set forth above, the court GRANTED Defendant Actual Mechanics' <u>Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2),</u> <u>12(b)(4), 12(b)(5), and 12(b)(6)</u> [#26] IN PART to the extent that Defendant sought to quash the service of process attempted on October 18, 2019, and DENIED all other relief requested.

IT IS SO ORDERED.

Date:   March 10, 2021                                    /s/ Indira Talwani
                                                         United States District Judge